UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY DESEAN ADAMS,

　　　　Plaintiff,

　　v.

JUSTIN VAN KLEECK,[1] et al.,

　　　　Defendants.

Case No.  18-cv-06178-YGR (PR)

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING MATTER FOR SETTLEMENT PROCEEDINGS; DENYING PLAINTIFF'S PENDING MOTIONS WITHOUT PREJUDICE TO REFILING; STAYING ACTION; AND DIRECTIONS TO CLERK**

## I.　INTRODUCTION

Plaintiff Henry Desean Adams, a state prisoner currently incarcerated at the California Men's Colony, has filed a *pro se* civil rights action under 42 U.S.C. § 1983, stemming from an August 22, 2018 incident during which excessive force was used against him by deputies at Martinez Detention Facility ("MDF"), where he was previously incarcerated.  Dkt. 1 at 3-5.[2] Plaintiff has named the following Defendants from the Contra Costa County Sheriff's Office ("CCCSO"): Deputies Justin Van Kleeck, Christopher Kooy, and William Weston.  *Id.* at 2. Plaintiff has sought monetary damages.  *Id.* at 3.

The parties are presently before the Court on Defendants' Motion for Summary Judgment. Dkt. 20.  Defendants move for summary judgment on the grounds that no genuine dispute of material fact exists and they are entitled to judgment as a matter of law because: (1) "Plaintiff cannot demonstrate that the use of force by defendants was objectively unreasonably in light of the facts and circumstances confronting [D]efendants"; and (2) Plaintiff failed to properly exhaust all available administrative remedies as required by the Prison Litigation Reform Act [("PLRA")], 42 U.S.C. § 1997e(a), barring suit."  Dkt. 20 at 4.  Also before the Court are Plaintiff's discovery motions entitled, "Motion . . . for all Records from [Nurse Practitioner ("N.P.")] Paul Manaut Be

---

[1] Defendant Kleeck's name was initially misspelled as "Kleek."  The Court has been informed that the correct spelling is "Kleeck."  Dkt. 20 at 1.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

Removed" and "Motion to Have Evidence Submitted and/or Subpoena[ed] By the Courts." Dkts. 32, 33.

Having read and considered the papers submitted, and being fully informed, the Court DENIES Defendants' motion for summary judgment.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Version

Plaintiff alleges that on August 22, 2018, he was subjected to excessive force by Defendant Van Kleeck, Weston, and Kooy. Dkt. 1 at 4-5. Specifically, Plaintiff alleges that on the date of the incident he had a "brief debate with [Defendant] Weston . . . about the filing process" relating to his civil complaints. *Id.* at 4. Plaintiff claims that he then walked away and took a shower. *Id.* When Plaintiff returned to show Defendant Weston his legal documents, Plaintiff noticed Defendant Weston "had called [for] back-up." *Id.* Defendant Van Kleeck ordered Plaintiff to "cuff up." *Id.* When Plaintiff refused to do so, Defendant Van Kleeck grabbed Plaintiff, and Defendant Kooy "trip[ped] Plaintiff." *Id.* Plaintiff claims that after he fell to the ground, Defendant Kooy "kneed [Plaintiff] in [the] head 'multiple times,'" Defendant Van Kleeck "punched [Plaintiff] in the back of the head multiple times," and Defendant Weston "punched [Plaintiff] in [the] stomach area." *Id.* at 5. Plaintiff claims that he "did not attempt to fight [Defendants] back . . . ." *Id.*

### B.    Defendants' Version

#### 1.    Prior to the Incident

On August 22, 2018, Defendant Weston was assigned as the primary module deputy on F-Module at MDF. Declaration of William Weston ("Weston Decl.") ¶¶ 3-8; Declaration of Christopher Kooy ("Kooy Decl.") ¶¶ 4-5; Declaration of Jason W. Mauck ("JWM Decl."), Ex. A, 23:10-24. At approximately 15:45 hours, Plaintiff approached Defendant Weston's desk during inmate free time. *Id.* Plaintiff inquired about his inmate funds for the commissary machine.[3] *Id.*

---

[3] Commissary refers to any goods, articles, and supplies purchased by inmates via the

United States District Court
Northern District of California

Defendant Weston looked up Plaintiff's funds and informed Plaintiff that he did not currently have money in his commissary account.  *Id.*  Plaintiff stated he had money and demanded that Defendant Weston call someone to get the money put back onto the commissary account.  *Id.*; Weston Decl. ¶ 4.  During the discussion Plaintiff became agitated and Defendant Weston told Plaintiff to calm down while he tried to figure out what was going on with the commissary account.  *Id.*; Weston Decl. ¶¶ 4-5.

MDF Operations told Defendant Weston that the Fiscal Department had taken money from Plaintiff's account in order to process a legal request packet that Plaintiff filed.  *Id.*; Weston Decl. ¶ 5.  Defendant Weston informed Plaintiff of the legal request cost, and Plaintiff started to raise his voice and yell, drawing the attention of other inmates out on free time.  *Id.*  Defendant Weston spoke calmly with Plaintiff in an attempt to inform him how Plaintiff could go about getting more information about why his funds were taken, and that Defendant Weston had no control over the situation.  *Id.*  Plaintiff continued to raise his voice and make comments about how he was being targeted and taken advantage of.  *Id.*; Weston Decl. ¶¶ 5-6.  Defendant Weston asked Plaintiff to lower his voice as they were only a few feet apart.  *Id.*; Weston Decl. ¶ 5.  Plaintiff stated that he believed that there was another incident where his funds were taken from his account in May 2018, and he wrote a grievance note in order to get the money back.  *Id.*; Weston Decl. ¶ 6.  Plaintiff stated he felt the department was cheating him out of money and that, in May of 2018, he filled out a similar legal application and had money taken out of his account to cover the application fee.  *Id.*  Defendant Weston suggested to Plaintiff he write to the Fiscal Department about the application fee because he was unfamiliar with the process.  *Id.*

Plaintiff continued talking loudly and made statements about how he would, "Take care of everything," and how deputies "would have to put him in the hole when [they] were done taking care of him."[4]  *Id.*; Weston Decl. ¶ 7.  Defendant Weston asked Plaintiff what he meant by the

---

Commissary Machine located on the Module.  Weston Decl. ¶ 3.

[4] The "hole" is a term used by inmates to mean placed into Administrative Segregation and

statements and Plaintiff told Defendant Weston, "not to worry about it." *Id.* Defendant Weston explained to Plaintiff that he has to take statements regarding pre-meditated violence seriously. *Id.*

Plaintiff then changed the subject back to his funds and insisted that Defendant Weston needed to get the funds back. *Id.*; Weston Decl. ¶ 8. Defendant Weston told Plaintiff that he did not have the ability to control the funds for his or any inmate account. *Id.* Plaintiff then turned and walked away. *Id.* In total, the encounter between Plaintiff and Defendant Weston lasted approximately 8-10 minutes. *Id.*; JWM Decl., Ex. A., 23:10-15.

At the time of the incident, Plaintiff had more than 19 documented Incident Reports in which he had been cited for having fought with staff and other inmates, displayed disruptive behavior, refused to obey orders given by deputies and other facility rule violations. Weston Decl. ¶ 9. At the time of the altercation all Defendants were aware of Plaintiff's aggressive reputation. Weston Decl. ¶¶ 9-10; Kooy Decl. ¶ 6; Declaration of Justin Van Kleeck ("Van Kleeck Decl.") ¶ 4. Plaintiff was approximately 5'7"and 220 pounds at the time of the incident. Weston Decl. ¶ 13; Kooy Decl. ¶ 6.

After his encounter with Plaintiff, Defendant Weston contacted Sergeant Erin Bai at MDF Operations, and explained the situation regarding Plaintiff and asked if Plaintiff could be moved to Intake to potentially be reclassified based on the disruption. Weston Decl. ¶ 11. Defendant Weston also told Sergeant Bai that Plaintiff had made statements that made him believe Plaintiff would possibly try to fight staff or other inmates. Weston Decl. ¶¶ 10-11. Sergeant Bai sent Defendant Kooy to F-Module, and Defendant Van Kleeck joined Defendant Kooy to escort Plaintiff to Intake. Weston Decl. ¶ 12; Kooy Decl. ¶¶ 4 -5; Van Kleeck Decl. ¶¶ 4-5.

### 2. The Incident

At approximately 15:55 hours on the same date, Defendants Van Kleeck and Kooy arrived on the Module to escort Plaintiff to the intake area. Weston Decl. ¶ 12-13. As Defendant Weston

---

housed alone for causing significant disruptions or fights with guards or other inmates. Weston Decl. ¶ 7.

was informing the escort deputies of the situation, Plaintiff approached the module desk with his fists balled up. *Id.*; Kooy Decl. ¶¶ 5, 8; Van Kleeck Dec, ¶ 5.

Defendants Van Kleeck and Kooy met Plaintiff near the desk and instructed him to put his hands behind his back to be handcuffed and escorted to Intake. Weston Decl. ¶ 14; Kooy Decl. ¶ 8; Van Kleeck Decl. ¶ 6; JWM Decl., Ex. A, 22: 2-7. Plaintiff refused to be handcuffed. Kooy Decl. ¶ 8; Van Kleeck Decl. ¶ 6; JWM Decl., Ex. A, 22:2-7. Defendants Kooy and Van Kleeck took position on either side of Plaintiff. Kooy Decl. ¶ 8; Van Kleeck Decl. ¶ 6. Plaintiff then started to take a bladed stance[5] and faced both deputies with his fists balled up. Kooy Decl. ¶ 8; Van Kleeck Decl. ¶ 6. Defendant Kooy then grabbed Plaintiff's right arm and attempted to place it in a control hold, while Defendant Van Kleeck did the same with Plaintiff's left wrist. Kooy Decl. ¶ 8; Van Kleeck Decl. ¶ 7. Plaintiff tensed his arms and actively resisted the deputies putting his arms behind his back. Weston Decl. ¶ 14; Kooy Decl. ¶¶ 7-9; Van Kleeck Decl. ¶¶ 6-8; JWM Decl., Ex. A, 26: 20-27:15.

While this was happening, Defendant Weston issued a "Code Three Assist," request for assistance. Weston Decl. ¶ 15. After Defendant Weston called the code, he assisted Defendants Van Kleeck and Kooy by positioning himself behind Plaintiff and wrapping his arms around Plaintiff's knee area. *Id.* This caused Defendants Van Kleeck, Kooy, and Weston along with Plaintiff to fall to the ground. Weston Decl. ¶ 15; Kooy Decl. ¶ 9; Van Kleeck Decl. ¶ 7. Defendant Kooy ended up in a seated position with his legs trapped under Plaintiff. Kooy Decl. ¶ 9. Once on the ground, commands were given to Plaintiff to "stop resisting," and put his hands behind his back. Weston Decl. ¶ 15; Kooy Decl. ¶ 9; Van Kleeck Decl. ¶ 7. Plaintiff did not follow the commands and continued to physically resist. *Id.* For example, Plaintiff attempted to push Defendant Kooy away and prevent his right arm from being pinned behind his back and tucked his arm under his body. Kooy Decl. ¶ 9; JWM Decl., Ex. A, 26:20-27:15. Plaintiff was

---

[5] A fighting stance in which one foot is in front of the other and the body is at an angle to a person in front. This is viewed as a precursor to an inmate initiating a fight. Weston Decl. ¶ 14.

also constantly moving his legs as if he was trying to stand up or kick a deputy, forcing Defendant Weston to place Plaintiff's legs in a leg lock to keep him from kicking or standing up.  Weston Decl. ¶ 16.  During the altercation Defendants Weston and Van Kleeck struck defendant Plaintiff's upper torso in an attempt to gain compliance, but were ineffective in making Plaintiff submit to being handcuffed.  Weston Decl. ¶ 15, Van Kleeck Decl. ¶ 8.  The three deputies were eventually able to control Plaintiff despite his resistance, and he was handcuffed by Defendant Van Kleeck.  Weston Decl. ¶¶ 14-16; Kooy Decl. ¶¶ 8-9; Van Kleeck Decl. ¶¶ 7-8.

After the altercation, Plaintiff was taken to the medical unit where he was examined.  There was only a small laceration on his finger and subjective complaints of neck and lower back pain.  Plaintiff had no independently verified injuries besides the small wound to his finger; and he was soon released back to Classifications for housing reassignment.  Weston Decl. ¶ 18; Kooy Decl. ¶ 11.  Plaintiff was seen the following day for a complete examination by N.P. Manaut at MDF.  Declaration of Paul Manaut, N.P., ("Manaut Decl."), ¶ 6.  During this follow up visit, Plaintiff expressed tenderness in his neck, back, and left wrist and hand, but denied any serious issues, and his x-rays were normal.  *Id.*, ¶¶ 7-9.

### C.    Factual Background Relating to Exhaustion

#### 1.    County Jail Procedures for Grievances and Appeals

In support of their motion for summary judgment for failure exhaust administrative remedies, Defendants have submitted the declaration of MDF Weekend Line Sergeant Daniel Bivian, who is presently assigned to the Custody Services Bureau ("CSB") and is responsible for the operation of the CCCSO's detention facilities, including MDF.  Declaration of Sergeant Daniel Bivian ("Bivian Decl.") ¶¶ 2-3.  CSB has a policy and procedure Manual (the "CSB Manual") that governs the operation of the CCCSO, including inmate grievances and appeals pursuant to the PLRA.  Bivian Decl. ¶¶ 3-5, Exs. A-C.

Specifically, inmates must first make an "informal" verbal grievance, and then a "formal" written grievance on an inmate request form.  *Id.* ¶ 5, Ex. A § II(A), (B).)  The formal written

grievance must be made within forty-eight hours after the incident or condition that is the subject of the complaint and submitted on the facility-issued Inmate Request Form.  *Id.*, Ex. A § II(B). The formal grievance is reviewed by a deputy and, if the deputy cannot resolve the grievance, it is forwarded to either the appropriate staff member or to a shift supervisor.  *Id.*, Ex. A § II(C)(4). After investigation of the grievance request, the staff member will send the response and disposition of the grievance to the inmate in writing.  *Id.* ¶¶ 5-6, Ex. A § II(C)(6).  The inmate has a right to appeal any decision on a grievance.  *Id.* ¶¶ 5-6, Ex. B.  The response to the formal grievance may be appealed in writing within three days to the Facility Commander using the same Inmate Request Form.  *Id.* ¶ 6, Ex. A § (II)(C)(8); Ex. B § II(A)(1).  The Facility Commander or a designee must respond to the grievance within ten days.  *Id.*, Ex. B § II(A)(3).  The Facility Commander's response may then be appealed.  *Id.* ¶ 7.  The Inmate Appeals Process requires that inmates "appeal previous decisions until they have been satisfied or the detention division chain of command has been exhausted."  *Id.*  An inmate must proceed up the chain of command through each of the discrete levels of review appeal—and do so in the proper order—to completely and properly exhaust his administrative remedies.  *Id.*

At the time Plaintiff was incarcerated at MDF to the date he was transferred to state custody on December 13, 2018, the discrete levels of appeal "consisted of the inmate appealing as initial denial to the facility commander, then to the division captain for the final review and determination of the grievance."  *Id.* ¶ 8.

All inmates, including Plaintiff, are made aware of CCCSO policies and procedures for grievances and appeals.  Bivian Decl. ¶ 9.  When inmates are brought into the custody and booked at MDF, they are required to watch an orientation video which provides an overview of MDF and CCCSO policies and procedures.  *Id.*  The policies and procedures are made available at each detention facility for the inmates to consult and review.  *Id.*  Plaintiff has filed many grievances and thus this shows that he was aware of the process.  JWM Decl., Ex. A, 54:1-5; Bivian Decl. ¶¶ 9-10.

United States District Court
Northern District of California

At intake, Plaintiff was assigned a "unique booking number," which is "maintained from the first day of their custody time until they are released by the CSB." Bivian Decl. ¶ 11. A booking file was established for Plaintiff. *Id.* Inmate incident reports, formal disciplinary actions, inmate requests, grievances, appeals, and the responses thereto are maintained in each inmate's booking file. *Id.*, *see, e.g.,* Ex. E. Plaintiff was booked at MDF on June 19, 2015. *Id.* ¶ 12. That same day Plaintiff signed an "Inmate Orientation" Verification Form, whereby he verified that he "viewed the inmate orientation video and have no questions regarding Contra Costa County Custody Services Bureau policies and procedures." *Id.*, Ex. D.

### 2. Relevant Grievances/Appeals

During his incarceration at MDF from June 19, 2015 to December 12, 2018, Plaintiff submitted a "voluminous amount of requests and grievances on facility-issued grievance and appeal forms." *Id.* ¶ 13. For example, and in relation to the time frame of this action, Plaintiff submitted twenty-three Inmate Request Forms between August 8, 2018 and September 30, 2018. *Id.*, Ex. E. During this relevant time period, only four grievances/appeals relate to the August 22, 2018 incident: one dated August 24, 2018; two dated September 12, 2018; and another dated September 22, 2018. JWM Decl., Ex. A, 58:25-59:20; Bivian Decl. ¶¶ 14-17, Ex. E.

#### a. August 24 Grievance

On August 24, 2018, Plaintiff filed an inmate request form, addressed to the "Sergeant," and labeled as a "Grievance." Bivian Decl. ¶ 15, Ex. E (Dkt. 28 at 27). The August 24 grievance mostly concerned money that was allegedly missing from Plaintiff's commissary account and described his August 22, 2018 encounter with Defendant Weston. *See id.*; JWM Decl., Ex. A, 48:13-50:1. At the end of the grievance, Plaintiff states as follows: "I noticed Weston had called back up. I walked up to the desk. Officer told me to cuff up to which I refused because I wanted to explain my issue. I was then slammed, kicked, punched [and] kneed by [Defendants] Weston, Kooy and Van Klee[c]k." Dkt. 28 at 27. The August 24 grievance was denied by Sergeant Frazier on September 3, 2018 with the following response: "I do not have control of the Fiscal

8

Dept.  The subsequent incident is documented in an incident and crime report.  I am not clear about what you are asking for."  *Id.*

### b.  September 12 Request[6]

On September 12, 2018, Plaintiff filed an inmate request form, addressed to "Classification," and labeled as a "Request."  Bivian Decl. ¶ 16, Ex. E (Dkt. 28 at 35).  The September 12 request states as follows:

> I am requesting that I be moved back to F-module [General Population ("G.P.")].  Last month on the date of 8.22.18 there was a[n] incident involving multiple deputies where I was assaulted.  I was not wr[itten] up or g[iven] a[n] incident report . . . video footage was obtained of [the] incident.  I have no issue with any inmate of F-mod [and] wish to return.

Dkt. 28 at 35.  On September 12, 2018, a jail Classification staff member named "Rodriguez" denied Plaintiff's September 12 request, stating as follows: "You are housed accordingly due to your actions on F Module."  *Id.*

### c.  September 12 Grievance

Also on September 12, 2018, Plaintiff filed another inmate request form, addressed to the "Facility Commander," and labeled as a "Grievance."  Bivian Decl. ¶ 16, Ex. E (Dkt. 28 at 37).  The September 12 grievance states as follows:

> On the date of 8.22.2018 a[n] incident occurred on F-Module where I was attacked by [Defendants] Van Klee[c]k, Kooy, and Weston.  This incident arose after I asked Defendant Weston about money that was t[aken] off of my books for no reason claiming it was for federal civil fees.  That has never been paid.  [And] I have verification.  I also asked why numbers are blocked by the facility on my phone without the customer request.  My issue is nothing has been done to the deputies.  My numbers are still blocked [and] when I was moved Defendant Weston took all my phone numbers out of my property.

Dkt. 28 at 37 (brackets added).

---

[6] The Court notes that the September 12 request was marked as "Rec'd By" a jail staff member named "A. Morales" and it was also noted that the "Date Rec'd" was "9/11/18."  Dkt. 28 at 35.  Because Plaintiff indicates that it was written on September 12, 2018, the Court assumes the September *11* date indicated next to "Date Rec'd" was a typographical error and should have instead indicated September *12*.

9

On September 12, 2018, Plaintiff's grievance was "Denied," and the facility commander[7] wrote as follows:

1.  Not filled out properly.

2.  Not grievable.

3.  Not within 48 hour[s] of [the] incident.

*Id.* (brackets added).

### d.  September 22 Grievance/Appeal

On September 22, 2018, Plaintiff filed an inmate request form, addressed to the "Classification Sergeant," and labeled as both a "Grievance" and "Appeal."  Bivian Decl. ¶ 17, Ex. E (Dkt. 28 at 39).  The September 12 grievance/appeal states as follows:

> I am writing this grievance because recently I requested to go back to F-Mod G.P.  The request was denied by Classification [Deputy] Rodriguez.  In the response, Deputy Rodriguez stated that I can not go back to F-Mod G.P. because of my actions.  What actions?  I was attacked by your deputies.  It's on video!  I didn't swing back nor threaten anybody or anything.  I am requesting that I please return [to F-Mod].

Dkt. 28 at 39.

On September 24, 2018, Plaintiff's September 22 grievance/appeal was denied by Classification Sergeant Arteaga with the following response: "Due to [the] incidence on 8-22-2018[,] you were insubordinate and interfered with staff duties."  *Id.*

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.; see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The movant bears the initial burden of

---

[7] The name of the facility commander (who responded to the September 12 grievance) is difficult to decipher.  Dkt. 28 at 37.

demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting in part *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the PLRA, should be raised by a defendant as an unenumerated Rule 12(b) motion).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of the motion for summary judgment, Defendants have presented their own declarations and supporting exhibits, dkts. 24-26, as well as declarations and supporting exhibits from N.P. Manaut, Sergeant Bivian, and their attorney, Contra Costa County Counsel Jason William Mauck, dkts. 23, 27-28.

Plaintiff's opposition is not verified and will not be considered because it was not signed under "penalty of perjury."  Dkt. 31.  Because the complaint is verified, dkt. 1 at 3, the Court will construe it as an opposing affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

## IV.    DISCUSSION

### A.    Exhaustion

In the instant motion for summary judgment, Defendants have argued that summary judgment as to Plaintiff's excessive force claim is warranted because he failed to exhaust administrative remedies.  Dkt. 20.

Meanwhile, the Court points out that Plaintiff has previously submitted a declaration, in the form of his complaint, filed under penalty of perjury stating that the grievance procedure was *unavailable* to him because jail officials prevented him from pursuing the relevant grievances relating to the excessive force claim at issue.  Dkt. 1 at 1-2.  The record shows that on his complaint form, Plaintiff had marked "YES" next to the question, "Is there a grievance procedure in this institution?"  Dkt. 1 at 1.  He also marked "YES" next to the following questions relating to exhaustion: "If so, did you present the facts in your complaint for review through the grievance procedure?" and "Is the last level to which you appealed the highest level of appeal available to you?"  *Id.* at 1-2.  Under the section for listing the appeals and results, Plaintiff states as follows:

> 1.    Informal appeal: No inf[ormal].
> 2.    First formal level: Grievance was wr[itten] to Sergeant.
> 3.    Second formal level: Grievance was wr[itten] to Facility Commander.
> 4.    Third formal level: None.

12

*Id.* Finally, when asked, "If you did not present your claim for review through the grievance procedure, explain why," Plaintiff states:  "It was cut short on the grievance process."  *Id.* at 2.

### 1.  Legal Framework for Exhaustion of Available Administrative Remedies

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *Porter*, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective."  *Id.* at 524; *Booth v. Churner*, 532 U.S. 731, 739-40 (2001).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  *Booth*, 532 U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money."  *Id.* at 739.

The PLRA requires proper exhaustion of administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.  Thus, compliance with prison or jail grievance procedures is required by the PLRA to properly exhaust. *Id.*  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Id.* at 84.

Section 1073 of Title 15 of the California Code of Regulations provides county jail inmates with a right to appeal and have resolved grievances relating to their confinement.

United States District Court
Northern District of California

As mentioned above, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56.  *See Albino v. Baca*, 747 F.3d at 1166.  If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendant are entitled to summary judgment under Rule 56.  *Id.*  But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding.  *Id.* at 1168.

Further, under *Albino*, "a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy."  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).  The burden then shifts to the plaintiff, "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *Id.*  Affirmative acts by prison officials that disrupt or prevent the exhaustion of administrative remedies may make administrative remedies effectively unavailable.  *Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010).  The ultimate burden of proof, however, remains with the defendants, and the evidence must be viewed in the light most favorable to the plaintiff.  *Paramo*, 775 F.3d at 1191.

When no other administrative remedy is available, the exhaustion requirement is deemed fulfilled.  *See Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001).  The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance.  *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005).  For example, a prisoner need not exhaust further levels of review once he has either received all the remedies that are available, or been reliably informed by an administrator that no more remedies are available.  *Id.* at 935.  In *Brown*, an inmate complaining about staff misconduct was deemed to have exhausted all available remedies because, once an investigation had been ordered at the second formal level under California's staff complaint process, the authorities lacked any remaining power to act on the subject of the complaint.  *Id.* at 937-40 (citing *Booth*, 532 U.S. at 736 n.4).

United States District Court
Northern District of California

### 2.  Analysis

In support of their allegation that Plaintiff's excessive force claim is unexhausted, Defendants argue that Plaintiff's grievances "fell short of the required exhaustion requirement." Dkt. 20 at 18.  First, as to the timely August 24 grievance, which was filed within the required forty-eight-hour time frame after the incident, Defendants take issue with the fact that it "primarily concerns the missing funds from [Plaintiff's] commissary account."  *Id.*  Defendants argue that that the August 24 grievance "only mentions the altercation in passing," and they point out that "[p]er policy, a grievance can only concern one issue at a time."  *Id.* (citing Bivian Decl., Ex. A, § II.B.3).  In the alternative, even assuming the August 24 grievance sufficiently addressed the excessive force incident, Defendants argue that Plaintiff failed to file a timely appeal of the denial pursuant to the Section II(A)(1) of the jail's inmate appeals process, which states that the response to the formal grievance may be appealed in writing within three days to the Facility Commander. *Id.* (citing Bivian Decl. ¶ 16, Ex. B § II(A)(1)).  The August 24 grievance was denied on September 3, 2018, and the appeal would have been due three days afterwards, on September 6, 2018, but Defendants point out that Plaintiff did not file a timely appeal on September 6, 2018.  *Id.* Thus, Defendants argue that, prior to initiating this action, Plaintiff did not properly exhaust any alleged wrongful conduct by Defendant with respect to the alleged excessive force incident on August 22, 2018.  *Id.* at 19.

With regard to the first step of the *Albino* burden shifting test, Defendants have sufficiently shown the existence of an available administrative remedy through MDF's grievance process.  The Court has reviewed the aforementioned relevant excessive force grievance—the August 24 grievance—and agrees with Defendants' assessment that the record shows that Plaintiff failed to file a timely appeal the denial of that grievance.  *See* Bivian Decl. ¶¶ 15-17.

Next, the burden is shifted to Plaintiff to show that "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *See Paramo*, 775 F.3d at 1191.

United States District Court
Northern District of California

As explained above, Plaintiff has declared, under penalty of perjury, that he attempted to exhaust his administrative remedies by filing a grievance that was denied, but that he choose not to appeal the denial of his excessive force grievance because his pursuit of this claim "was cut short on the grievance process." Dkt. 1 at 2. Thus, it seems that Plaintiff is claiming that such an appeal was "obviously futile." *See Paramo*, 775 F.3d at 1191. The Court points out that some truth exists to Plaintiff's allegation because that the record shows that after the deadline to file an appeal had passed, he turned to different avenues to present his excessive force claim, to no avail. On September 12, 2018, Plaintiff submitted two different inmate request forms: (1) his September 12 request; and (2) his September 12 grievance. Dkt. 28 at 35, 37. In his September 12 request, Plaintiff addressed his request to Classification, mentioned the August 22, 2018 excessive force incident, and asked to be relocated back to F-Module. *Id.* at 35. In denying the September 12 request to be relocated, Classification Deputy Rodriguez indicated that Plaintiff was "housed accordingly due to [his] actions on F-Module."[8] *Id.* Meanwhile, in the September 12 grievance, Plaintiff addressed it to the "Facility Commander," and again raised the August 22, 2018 excessive force incident. *Id.* at 37. Plaintiff indicated that his issue was that "nothing ha[d] been done to the deputies," which could be construed as a request for an investigation into their actions of alleged excessive force against Plaintiff. *Id.* However, his September 12 grievance was denied, and in response, the reviewer informed Plaintiff that his issue was "[n]ot grievable" and "[n]ot within 48 hour[s] of [the] incident." *Id.* Thus, it seems that no further administrative remedies were available to Plaintiff because jail officials informed him that his excessive force claim was not appealable and untimely. *See Paramo*, 775 F.3d at 1191-92 (prisoner's statements that she was thwarted from filing a grievance and appeal by correctional officer who rejected her grievance and refused to file her appeal meet burden of production in showing that administrative remedies were not available to her); *see also Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009) (no

---

[8] Plaintiff appealed the denial of his September 12 request by filing his September 22 grievance/appeal, in which he again requested to be relocated back to F-Module. Dkt. 28 at 39. However, his grievance/appeal was denied on September 24, 2018. *Id.*

need to exhaust further levels of review after inmate received form rejecting his appeal at first formal level as untimely filed and form did not permit him to appeal that decision).

Upon shifting the burden to Plaintiff, the Court, viewing the evidence in the light most favorable to Plaintiff, finds that he has sufficiently demonstrated that the prison's administrative remedies were "effectively unavailable" to him because it was evident that any effort to appeal was "obviously futile." *See Paramo*, 775 F.3d at 1191.

In contrast, the evidence produced by Defendants—the absence of Plaintiff's appeal of the denial of his August 22 grievance—is insufficient to carry their ultimate burden of proof in light of Plaintiff's verified factual allegations. *See Paramo*, 775 F.3d at 1192 (finding that the declaration submitted by defendant did "nothing to rebut [the plaintiff]'s evidence that administrative remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case").

At this juncture, Plaintiff's evidence—that he attempted to file an excessive force grievance which was denied and his claim that any effort to appeal the denial was "cut short" and obviously futile—is sufficient to defeat Defendants' motion for summary judgment. *See Nunez*, 591 F.3d at 1224 (although acts by prison officials that deter inmate from exhausting administrative remedies may make those remedies effectively unavailable, inmate must demonstrate he took reasonable and appropriate steps to exhaust his claim and was precluded from doing so). Accordingly, Defendants are not entitled to summary judgment based on the failure to exhaust administrative remedies as to the excessive force claim, and their motion is DENIED on this ground. Dkt. 20.

### B.   Excessive Force Claim

The Court shall now consider the merits of Plaintiff's claim that Defendants used excessive force against him on August 22, 2018.

To prove an excessive force claim under section 1983, a pretrial detainee[9] must show only

---

[9] The Due Process Clause of the Fourteenth Amendment protects a post-arraignment,

that the "force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397. Because this standard is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc). A non-exhaustive list of considerations that may bear on the reasonableness of the force used includes "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

Officers may also be held liable if they have an opportunity to intercede when their fellow officers use excessive force but fail to do so. *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

Defendants contend in their motion for summary judgment that Plaintiff has not raised a triable issue of fact as to whether Defendants' use of force on August 22, 2018 was reasonable. Defendants Kooy and Van Kleeck claim in their declarations that Plaintiff refused Defendant Kooy's order to "cuff up," took a "bladed stance" which indicated that he was ready to attack the deputies, and continued to actively resist by tensing his body, and in response: (1) Defendant Kooy grabbed a "control hold" of Plaintiff's right arm; attempted a "leg sweep takedown" of

---

pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)). The Fourth Amendment applies to allegations of use of excessive force against pre-arraignment detainee. *Pierce v. Multnomah County, Oregon*, 76 F.3d 1032, 1043 (9th Cir. 1996). It is not clear when Plaintiff was arraigned, but it does not matter for this analysis because under either Amendment, the analysis of his excessive force claim turns on the reasonableness of the officers' actions under the circumstances. *See id.* (applying Fourth Amendment reasonableness standard to pretrial detainee's claim); *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990) (due process claim by pretrial detainee requires courts to balance several factors focusing on the reasonableness of the officers' actions under the circumstances).

Plaintiff; put Plaintiff in a headlock with his right arm; pinned his right knee on Plaintiff's right shoulder; and secured Plaintiff's right arm in a rear wristlock control hold; and (2) Defendant Van Kleeck grabbed Plaintiff's left wrist in an attempt to place it in a rear wrist lock; placed his left forearm on the back of Plaintiff's head and began to force his had down; delivered two or three blows to Plaintiff's ribcage with his right knee; and "did a two-on-one rock-out" until he was able to gain control of Plaintiff's left arm and handcuff Plaintiff.  Kooy Decl. ¶¶ 8-9; Van Kleeck Decl. ¶¶ 7-8.  Meanwhile, Defendant Weston asserts that during the incident, Plaintiff "did not follow commands [to submit to be handcuffed] and continued to physically resist," and in response Defendant Weston wrapped his arms around Plaintiff's knee area causing Plaintiff to fall along with the deputies, and "delivered a strike with [his] fist to [Plaintiff's] upper torso in an attempt to gain compliance."  Weston Decl. ¶ 15.  Defendant Van Kleeck states that "[a]t no time did [he], or [D]eputies Weston or Kooy strike [Plaintiff's] head.  Van Kleeck Decl. ¶ 8.  In support of their claims, Defendants argue that there is no evidence showing that their use of force was excessive under the circumstances or that Plaintiff was injured as a result of their actions.

As mentioned, Plaintiff's verified complaint, which was signed under penalty of perjury, may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder*, 55 F.3d at 460 & nn.10-11.  The Court on summary judgment must assume the truth of Plaintiff's verified pleadings.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (citing *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors, Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987)).  Plaintiff contends in his complaint that there was no provocation for Defendants' use of force because he "did not attempt to fight [Defendants]."  Dkt. 1 at 5.  Plaintiff claims that he was kneed in the head multiple times by Defendant Kooy, punched in the back of his head multiple times by Defendant Van Kleeck, and punched in his ribs and stomach area by Defendant Weston.  *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact remain.  Assuming the truth of Plaintiff's pleadings, evidence produced by

Defendants conflicts with Plaintiff's evidence with respect to at least two questions of fact. First, a genuine issue of material fact exists regarding whether Plaintiff was resistant or combative during the incident such that Defendants' application of force was necessary. Second, assuming some force was warranted, there is a material issue of fact regarding whether Defendants' force was objectively reasonable. *See Kingsley*, 576 U.S. at 396-97. A reasonable jury, drawing inferences from facts in the light most favorable to Plaintiff, could find Defendants' use of force objectively unreasonable. *See id.* The Court concludes that Plaintiff has set forth "specific facts showing that there is a genuine issue for trial" and, therefore, Defendants are not entitled to summary judgment as a matter of law on the merits of his excessive force claim. *Celotex*, 477 U.S. at 324. Accordingly, Defendants' motion for summary judgment is also DENIED on this alternative ground.

## V.    CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.      Defendants' motion for summary judgment is DENIED. Dkt. 20.

2.      The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference. The Court finds that a referral is in order as to Plaintiff's excessive force claim. Thus, this case is REFERRED to Magistrate Judge Robert M. Illman for settlement proceedings pursuant to the Pro Se Prisoner Settlement Program. Such proceedings shall take place within 120 days of the date this Order is filed, or as soon thereafter as Magistrate Judge Illman's calendar will permit. Magistrate Judge Illman shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within ten (10) days after the conclusion of all settlement proceedings, shall file with the Court a report thereon.

Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Illman deems necessary to conduct such proceedings, this action is hereby STAYED until further order by the Court following the resolution of the settlement proceedings.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

The Clerk of the Court is directed to serve Magistrate Judge Illman with a copy of this order, and to notify Magistrate Judge Illman that a copy of the court file can be retrieved from the Court's electronic filing database.

3.      If this matter does not settle, then this case will proceed to trial.

4.      Because Defendants' motion for summary judgment has been denied and this case has been referred for settlement proceedings, Plaintiff's pending discovery motions entitled, "Motion . . . for all Records from N.P. Paul Manaut Be Removed" and "Motion to Have Evidence Submitted and/or Subpoena[ed] By the Courts," are DENIED without prejudice to refiling if this case proceeds to trial.  Dkts. 32, 33.

5.      This Order terminates Docket Nos. 20, 32, and 33.

IT IS SO ORDERED.

Dated:  July 15, 2020

_____
YVONNE GONZALEZ ROGERS
United States District Judge

cc: Plaintiff/counsel; Magistrate Judge Illman

21